UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN RAY SHELLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>LEISURE HOTEL GROUP, LLC,<br><br>    Defendant. | Case No. 23-cv-02007-DMR<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 21 |

Defendant Leisure Hotel Group, LLC ("Leisure Hotel Group") moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff Marvin Ray Shelley's first amended complaint. [Docket No. 21 ("Mot.").] Shelley opposed, and Leisure Hotel Group replied. [Docket Nos. 24 ("Opp'n"), 26 ("Reply").] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, Leisure Hotel Group's motion is granted in part and denied in part.

**I.    BACKGROUND**

Shelley filed a complaint against Leisure Hotel Group on April 25, 2023. On August 10, 2023, the court held a hearing on Leisure Hotel Group's motion to dismiss and granted the motion in part. [Docket No. 16 (8/10/2023 Minute Order).] Specifically, Shelley was granted leave to amend his complaint to sufficiently plead that he is a qualified individual with a disability and that his dog is a service animal under federal law. The court rejected Defendant's argument that Shelley failed to establish Article III standing because he had not adequately pleaded an intent to return. *Id.* Shelley timely filed a first amended complaint on August 24, 2023. [Docket No. 17 ("FAC").]

The FAC alleges the following:[1] Shelley is disabled and receives social security disability benefits because of his disabilities. FAC ¶ 6. Shelley was on dialysis for 11 years and received a kidney transplant in 2018. *Id.* ¶ 9. He has not been able to work since the loss of both of his kidneys in 2007. *Id.* As a result of his kidney issues, Plaintiff developed attention-deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), anxiety, and depression. *Id.* ¶ 10. He also suffers from neuropathy in both of his legs. *Id.* ¶ 8. Shelley's ADHD substantially limits his ability to focus and sleep, *id.* ¶ 11, while his PTSD, anxiety, and depression substantially limit his ability to care for himself, communicate, and breathe. *Id.* ¶ 12. Shelley's neuropathy impacts his "community ambulation." *Id.* ¶ 13.

Shelley uses a service dog professionally trained to assist him and help manage his symptoms. FAC ¶¶ 14-16. The service dog is trained to "perform covering in public, deep tissue therapy, and provide a counterbalance to Plaintiff when he becomes unsteady." *Id.* ¶ 16. "Covering" helps with Shelley's PTSD, anxiety and depression: the service dog "navigate[s] around all sides of Plaintiff and sit[s] on his foot . . . mak[ing] Plaintiff feel safe and secure in his space, and . . . provi[ding] a buffer area around Plaintiff while in public." *Id.* ¶ 17. This extra space "calms and reassures" Shelley and limits triggers that could cause a panic attack. *Id.* Deep tissue therapy helps Shelley with his ADHD and anxiety. *Id.* ¶ 18. For example, the service dog's deep pressure therapy calms Shelley by allowing him to focus on the dog rather than the issue Shelley is "obsessively overthinking or fearful of." *Id.* Ultimately, Shelley's service dog "greatly improves his quality of life and gives him far more independence than he would have alone." *Id.* ¶ 19.

Shelley lives in Walnut Creek, not far from the Clarion Hotel, which is owned by Leisure Hotel Group. FAC ¶¶ 2, 20. On April 8, 2023, Shelley checked into the Clarion Hotel for a one-night stay because his home was undergoing construction work that required Shelley to vacate the premises. *Id.* ¶¶ 21-23. Shelley brought his service dog with him. *Id.* ¶ 24. Shelley alleges that

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

on the day of his visit, the front desk attendant asked him about his service dog and "even asked [Shelley] about his medical condition." *Id.* ¶ 25. Shelley answered the employee's questions, even though he "is not required by law to divulge the nature of his disability to a business[.]" *Id.* ¶ 26.

While Shelley only anticipated staying at the Clarion Hotel for one night when he booked his room, he asked the front desk to extend his stay by an additional night because of delays with the construction in his home. FAC ¶ 27. According to Shelley, "[t]hat's when the real trouble began." *Id.* On April 9, 2023, Leisure Hotel Group's manager allegedly refused to extend Shelley's stay "solely because of the presence of [Shelley]'s service dog." *Id.* ¶ 28. The manager initially accused Shelley of "harboring a 'pet' in the hotel." *Id.* ¶ 29. Shelley alleges that he did his best to "educate the combative manager" and "specifically told the manager that his dog was actually a trained, working service dog." *Id.* ¶ 30. However, the manager would not listen to Shelley and tried to tell him that his disabilities were "not serious enough to warrant the services of a trained service dog." *Id.* ¶ 31. The manager did not identify herself as a medical professional or profess to have any specific information about the nature of Shelley's disabilities. *Id.* The manager nevertheless told Shelley "in very certain terms" that she was denying him the ability to stay at the Clarion Hotel any longer. *Id.* ¶ 32. According to Shelley, the manager told him that he had to "immediately vacate his hotel room." *Id.* Shelley asserts that he had "no choice but to pack up his things and leave the hotel," and had to find alternative lodging for the night. *Id.* ¶ 33.

Shelley alleges that he would like to return to the Clarion Hotel "when they institute an anti-discrimination policy[.]" FAC ¶ 34. He explains that the hotel is conveniently located near him and "provides him with a great option for short-term lodging." *Id.* Shelley further claims that "[d]enying access to [a patron's] service animal could have serious consequences for [the] patron's health and wellbeing, as well as their ability to fully participate in the hotel's services and amenities." *Id.* ¶ 35.

The FAC alleges two claims for relief: 1) violations of the ADA based on Leisure Hotel Group's policy, which denies access to persons like Shelley, FAC ¶¶ 36-47; and 2) violations of the Unruh Act based on the alleged ADA violations. *Id.* ¶¶ 48-57. Leisure Hotel Group moves

3

1    pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter

2    jurisdiction and failure to state a claim.

3    **II.     LEGAL STANDARDS**

4        **A.  Rule 12(b)(1)**

5        A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject

6    matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The challenging party may make a facial or

7    factual attack challenging subject matter jurisdiction.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

8    2000).  A facial challenge asserts that "the allegations contained in a complaint are insufficient on

9    their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

10   (9th Cir. 2004).  "The district court resolves a facial attack as it would a motion to dismiss under

11   Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences

12   in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter

13   to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

14       In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would

15   otherwise invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  "In resolving a factual attack

16   on jurisdiction, the district court may review evidence beyond the complaint without converting

17   the motion to dismiss into a motion for summary judgment," and "[t]he court need not presume

18   the truthfulness of the plaintiff's allegations" in deciding a factual attack.  *Id.*  "The plaintiff bears

19   the burden of proving by a preponderance of the evidence that each of the requirements for

20   subject-matter jurisdiction has been met.  With one caveat, if the existence of jurisdiction turns on

21   disputed factual issues, the district court may resolve those factual disputes itself."  *Leite*, 749 F.3d

22   at 1121-22 (internal citations omitted).

23       **B.  Rule 12(b)(6)**

24       A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

25   the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When

26   reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the

27   factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

28   curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory"

4

or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

**III.   DISCUSSION**

Leisure Hotel Group moves pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim, arguing that Shelley has not pleaded any facts showing that he is disabled or that his dog is a "service animal" within the meaning of the ADA. Leisure Hotel Group also moves pursuant to Rule 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction, claiming that Shelley does not have standing to bring the ADA claim.[2] Finally, Leisure Hotel Group argues

---

[2] Leisure Hotel Group appears to assert a facial challenge to the complaint.

5

that the court should dismiss or strike Shelley's Unruh Act claim.[3]  The court addresses each argument in turn.

### A. Failure to State a Claim

Title III of the ADA prohibits discrimination "on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  Unlawful discrimination under the ADA occurs when features of a public accommodation deny equal access to disabled persons:

> It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

42 U.S.C. § 12182(b)(1)(A)(i).  To succeed on a Title III claim, a plaintiff must establish "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).

Leisure Hotel Group argues that the complaint fails to state a claim under the ADA because Shelley has not adequately alleged that 1) he is disabled under the ADA and 2) his dog is a "service animal" for purposes of the ADA.  Mot. at 2-7.

The ADA defines a disability as a "physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).  Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking,

---

[3] On reply, Leisure Hotel Group moves to dismiss the request for monetary damages because Shelley was not granted leave to replead the Unruh Act claim, and monetary damages are not available under the ADA. Reply at 8.  Because the court dismisses Shelley's claim under the Unruh Act below, Leisure Hotel Group's request is denied as moot.

6

communicating, and working." 42 U.S.C. § 12102(2)(A).

Here, Shelley alleges that he has both physical and mental impairments that substantially limit one or more major life activities. FAC ¶ 7. Specifically, Shelley suffers from neuropathy in both of his legs, ADHD, PTSD, anxiety, and depression. *Id.* ¶ 8. He also received a kidney transplant in 2018. *Id.* ¶ 9. Shelley asserts that his neuropathy substantially limits his "community ambulation." *Id.* ¶ 13. He also alleges that his ADHD substantially affects his ability to focus, and his obsessive overthinking prevents him from sleeping. *Id.* ¶ 11. Shelley's PTSD, anxiety, and depression substantially limit his ability to care for himself, communicate, and breathe. *Id.* ¶ 12. For instance, if Shelley is having a panic attack caused by his PTSD, he is not able to communicate and has trouble forming complete, coherent sentences due to his shortness of breath. *Id.* Shelley alleges that he completely shuts down during a panic attack, making it feel impossible to complete a simple task. *Id.* In extreme circumstances, Shelley must seek medical attention. *Id.* Finally, Shelley claims that his kidney issues have prevented from working since approximately 2007. *Id.* ¶ 9. The court finds that these allegations are amply sufficient to allege a disability under the ADA.

Leisure Hotel Group cites readily distinguishable cases for the proposition that "courts in this Circuit have dismissed ADA claims for failing to allege with the requisite factual particularity that the elements of the ADA are met." *See* Mot. at 4. In *Longariello v. Gompers Rehab. Ctr.*, No. CV-09-1607-PHX-GMS, 2010 WL 94113, at *3 (D. Ariz. Jan. 5, 2010) the plaintiff "merely label[ed] himself as 'disabled' in the Complaint." The court acknowledged plaintiff's explanation in his opposition brief that he suffers from a psychological disability but noted that the allegation was not in the complaint. In *Kaur v. City of Lodi*, No. 2:14-CV-828-GEB-AC, 2014 WL 3889976 (E.D. Cal. Aug. 7, 2014), the complaint alleged that "Plaintiff was a disabled Gulf War veteran who suffered from posttraumatic stress disorder and depression," and "Plaintiff was a qualified individual with a disability under Title II of [the] ADA, and was suffering from mental illness related disability at the time of the incident giving rise to this action." 2014 WL 3889976, at *5 (cleaned up). The court found that the allegations were conclusory and insufficient to infer that the plaintiff suffered from a disability defined in the ADA. *Id.* Finally, in *Lambdin v. Marriott*

7

1  *Resorts Hosp. Corp.*, No. CIV. 14-00345 SOM, 2015 WL 263569, at *2 (D. Haw. Jan. 21, 2015),

2  the plaintiff alleged that he "suffered a work related injury which developed into a disability" and

3  that "[t]he disability related to hip injuries and bilateral hip replacements." The court found these

4  allegations insufficient because it could not discern whether the plaintiff qualified as disabled

5  under the ADA "through substantial limitation of a major life activity, by having a record of such

6  impairment, or by being regarded as having such an impairment." *Id.*

7        In contrast, Shelley specifically alleges the types of physical and mental impairments he

8  suffers from – neuropathy, ADHD, PTSD, anxiety, depression, and kidney issues – as well as the

9  substantial impact of those impairments on "major life activities," 42 U.S.C. §§ 12102(1)(A),

10  (2)(A), including caring for oneself, sleeping, walking, speaking, breathing, concentrating,

11  communicating, and working. *See e.g.*, FAC ¶¶ 9, 11, 12, 13. Shelley's detailed allegations

12  support a plausible inference that his mental and physical impairments substantially limit several

13  major life activities.

14        Leisure Hotel Group further asserts Shelley failed to allege that he has been diagnosed by a

15  medical professional. Mot. at 4. None of the cases cited by Defendant establish such a

16  requirement.

17        Next, Leisure Hotel Group argues that the complaint does not include any allegations that

18  Shelley's emotional and physical conditions are "any worse than those suffered by many adults."

19  Mot. at 4-5. Leisure Hotel Group does not tie this challenge back to the definition of a "disability"

20  under the ADA, and it is not clear what argument Leisure Group Hotel is trying to make. To the

21  extent Leisure Hotel Group claims that a major life activity is substantially limited only if "the

22  individual cannot perform the activity that the average person in the general population can

23  perform or if the manner in which the individual can perform the activity is significantly restricted

24  as to the condition, manner or duration . . . as compared to . . . [an] average person in the general

25  population," Mot. at 5 (quoting *Miller v. Ladd*, No. CV 08-05595 NJV, 2010 WL 2867808, at *2

26  (N.D. Cal. July 20, 2010)), Shelley specifically alleges that "[a] simple task that the average

27  individual can complete will seem impossible for Plaintiff during a panic attack as he completely

28  shuts down, and Plaintiff will have to remove himself from that situation altogether." FAC ¶ 12.

1   Leisure Hotel Group ignores this allegation.

2         Leisure Hotel Group also argues that Shelley fails to allege that he could not "dress and
3   feed himself, do household chores, drive, write, and use a computer." Mot. at 6. Leisure Hotel
4   Group does not explain why Shelley must make these specific allegations, let alone cite any
5   authority to support that proposition. As discussed above, Shelley has adequately alleged that his
6   impairments substantially impact his ability to care for himself, sleep, walk, speak, breathe,
7   concentrate, communicate, and work – all of which are "major life activities" under 42 U.S.C. §
8   (2)(A). With respect to Shelley's neuropathy, Leisure Hotel Group argues on reply that Shelley
9   fails to allege that he has any difficulty walking that rises to the level of a substantial impairment.
10  Reply at 2. To the contrary, the complaint alleges that Shelley's neuropathy "substantially limits
11  his community ambulation." FAC ¶ 13. As Shelley explains in his opposition brief, "community
12  ambulation" means "getting around." Opp'n at 2.

13        Finally, Leisure Hotel Group contends that Shelley's alleged conditions appear to be
14  transitory and sporadic rather than "permanent or long-term" because they occur during panic
15  attacks. Mot. at 6 (citing *Apr. v. U.S. Airways, Inc.*, No. CV-09-1707-PHX-LOA, 2011 WL
16  488893, at *9-*10 (D. Ariz. Feb. 7, 2011). This argument is disingenuous – while some of the
17  consequences of Shelley's impairments may be acutely felt at specific times (for example, during
18  a panic attack), the complaint does not suggest that Shelley's mental or physical impairments are
19  "transitory" or "sporadic." To the contrary, Shelley alleges that his kidney issues have prevented
20  him from working since 2007, and his ADHD, PTSD, anxiety, and depression developed as a
21  result of these kidney issues and "continue[] to this day." FAC ¶ 10; *c.f. Apr. v. U.S. Airways,*
22  *Inc.*, 2011 WL 488893, at *9-*10 (holding at summary judgment that if plaintiff had continued
23  taking her medication, her psoriasis would have lasted four to six weeks – "a short duration that
24  does not meet the requirement that a limitation on a major life activity be permanent or long term"
25  (internal quotation marks and citation omitted)).[4]

---

[4] Leisure Hotel Group advances similar misleading arguments on reply. For example, Leisure Hotel Group claims that "'disrupting sleep' does not rise to the level of substantially impairing a major life activity. In fact, a recent study shows that 1 out of every 3 Americans suffer from insomnia, and 75% of older Americans suffer from insomnia. Simply alleging that he has

9

In sum, the court finds that Shelley has sufficiently alleged that he is disabled under the ADA.

Next, Leisure Hotel Group argues that Shelley has not alleged facts showing that his dog is a "service animal." Mot. at 7. Federal law defines a "service animal" as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 C.F.R. § 36.104. Under section 36.104:

> Examples of work or tasks include, but are not limited to, assisting individuals who are blind or have low vision with navigation and other tasks, alerting individuals who are deaf or hard of hearing to the presence of people or sounds, providing non-violent protection or rescue work, pulling a wheelchair, assisting an individual during a seizure, alerting individuals to the presence of allergens, retrieving items such as medicine or the telephone, providing physical support and assistance with balance and stability to individuals with mobility disabilities, and helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors. The crime deterrent effects of an animal's presence and the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition.

Shelley alleges that his service dog is professionally trained to assist him, specifically by "covering in public" and providing deep tissue therapy and counterbalance to Shelley when he becomes unsteady. FAC ¶ 16. The complaint states that Shelley's service dog provides "covering" by "navigat[ing] around all sides of Plaintiff and sit[ting] on his foot" while in public. *Id.* ¶ 17. This creates a "buffer area" around Shelley, which "calms and reassures Plaintiffs and limits triggers that could cause a panic attack." *Id.* The deep tissue therapy, on the other hand, ameliorates problems caused by Shelley's ADHD and anxiety by, for example, allowing him to "focus on his service animal and not the issue that Plaintiff is obsessively overthinking or fearful of." *Id.* ¶ 18.

---

difficulty sleeping is no disability at all; otherwise, three quarters of Americans ould (sic) be considered disabled." Reply at 2 (internal citation omitted). This argument conflates Shelley's alleged disability – ADHD – with one of several impacts of that disability on a major life activity – sleeping. To be sure, Shelley also alleges that ADHD substantially limits his ability to focus. FAC ¶ 11. Leisure Hotel Group does not address that aspect of Shelley's disability.

10

1  Leisure Hotel Group contends that Shelley's allegations boil down to his dog providing
2  emotional support, a sense of security, comfort, and companionship – none of which constitute
3  "work or tasks" under the ADA's definition of a service animal. Mot. at 6-7. The court disagrees.
4  As an initial matter, Leisure Hotel Group's suggestion that additional evidence is required
5  at the pleading stage is misleading. *See* Mot. at 7 (citing *Prindable v. Ass'n of Apartment Owners*
6  *of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1247 (D. Haw. 2003), *aff'd sub nom. Dubois v. Ass'n of*
7  *Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006)). *Prindable* analyzed a claim
8  under the Fair Housing Act at summary judgment. The plaintiff averred that his service animal
9  had been individually trained to provide emotional support and to alert him to any unusual
10 circumstances, but the record contained no additional admissible evidence of the service animal's
11 qualifications. 304 F. Supp. 2d at 1256. In fact, in response to questions from the court,
12 plaintiff's counsel acknowledged that the animal was not individually trained and possessed no
13 abilities "unassignable to the breed or to dogs in general." *Id.* at 1256-57. In that context, the
14 court explained that "[u]nsupported averments from [the plaintiff] and slight anecdotal evidence of
15 service are not enough (particularly in light of counsel's candid admission) to satisfy Plaintiffs'
16 burden in opposition to summary judgment." *Id.* at 1257. Here, Shelley does not carry an
17 evidentiary burden at the pleading stage.
18 Taken as true, Shelley's allegations establish that his dog was trained to provide "physical
19 support and assistance with [Shelley's] balance and stability" through "counterbalance," and
20 helping Shelley with his PTSD, ADHD, anxiety, and depression by "preventing or interrupting
21 impulsive or destructive behaviors" through "covering" and "deep tissue therapy." *See* 28 C.F.R.
22 § 36.104. Contrary to Leisure Hotel Group's assertions, these allegations make clear that
23 Shelley's service dog was trained to perform tasks directly related to his disability, and that his
24 dog provides more than "emotional support." *See* Reply at 3.
25 Leisure Hotel Group specifically takes issue with "the incredulous notion that [Shelley's]
26 dog gives him 'deep tissue massages,'" arguing that this allegation does not rise to the
27 "plausibility" standard. Reply at 2 (citing *Currier v. JP Morgan Chase Bank, NA*, No. 20-cv-227-
28 LAB (JLB), Docket No. 24 (Order Denying Requests for Judicial Notice) (S.D. Cal. Mar. 16,

United States District Court
Northern District of California

11

2020)); *see also id.* at 3.  In *Currier*, the court simply explained that the plaintiff had been ordered to file an amended complaint, and thus had to plead facts in his complaint rather than file requests for judicial notice.  As discussed, the FAC alleges ample facts about Shelley's impairments and the ways in which his service dog is trained to ameliorate the impact of those impairments.  *See* FAC ¶¶ 16-19.

Leisure Hotel Group also complains that Shelley's allegations do not describe who trained his service dog or whether the dog received any certification.  Mot. at 7.  Leisure Hotel Group does not provide any authority to support this argument, and the court declines to read such a requirement into section 36.104.

Accordingly, the court finds that Shelley has pleaded sufficient facts to establish that he is disabled within the meaning of the ADA and that he has a qualified service animal.  Leisure Hotel Group's motion to dismiss on these grounds is denied.

**B.  Standing**

Leisure Hotel Group argues that Shelley lacks standing to pursue injunctive relief because he has not alleged facts showing that he will suffer a "real and immediate threat of future injury." Mot. at 8. Because standing is a jurisdictional issue, it is properly addressed under a Rule 12(b)(1) motion.  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

"[A] disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).  Courts assess the sufficiency of a plaintiff's Article III standing through the following test:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  For an injury to be 'particularized,' it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*,

504 U.S. at 560 n.1). Moreover, "a 'concrete' injury must be *de facto*; that is, it must actually exist." *Id.* at 340 (citation omitted). "[A] disabled person suffers an injury in fact when he 'encounters a barrier' at a place of public accommodation 'that deprives him of full and equal enjoyment of the facility due to his particular disability.'" *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 907(9th Cir. 2011) (quoting *Chapman*, 631 F.3d at 944). Article III requires that the injury must be "related to the plaintiff's disability." *Chapman*, 631 F.3d at 949. "[O]nce a disabled plaintiff has encountered a barrier violating the ADA, 'that plaintiff will have a personal stake in the outcome of the controversy' so long as his or her suit is limited to barriers to that person's particular disability.'" *Id.* at 947 (quoting *Doran*, 524 F.3d at 1044).

Injunctive relief is the only relief available to private ADA plaintiffs; therefore, a plaintiff alleging ADA violations must also establish a "real and immediate threat of repeated injury" and "a sufficient likelihood that he will again be wronged in a similar way." *Chapman*, 631 F.3d at 946, 948. In other words, "the plaintiff must allege 'continuing, present adverse effects' stemming from the defendant's actions." *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1098 (9th Cir. 2017) ("CREEC") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury." *Lujan*, 504 U.S. at 564 (emphasis in original).

As Shelley point outs, the court previously rejected Defendant's standing argument and held that Shelley adequately pleaded an intent to return. *See* 8/10/2023 Minute Order. Leisure Hotel Group insists that alleging an "intent to return" is different from alleging a "real and immediate threat of future injury," Reply at 1, yet its briefs essentially argue that Shelley fails to allege more than a vague desire to return to the Clarion Hotel. *See* Mot. at 8 (devoting a single paragraph to this argument, in which Leisure Hotel Group contends "[t]here are no allegations that Plaintiff plans to do further work on his residence or that Plaintiff would otherwise have any need to stay at this hotel near his residence"); Reply at 4 ("Shelley does not claim that he regularly must vacate his residence and therefore frequently needs a hotel room nearby. He does not even allege that he is planning other construction requiring him to vacate his residence at a specific time (or

13

1 even a general time) in the future"). In other words, this is not a new argument. Leisure Hotel
2 Group merely tries to repackage its failed argument.

3       The court has already ruled on this issue and declines to reconsider it here. Shelley
4 adequately has pleaded an intent to return. The allegations establish a sufficient likelihood that he
5 will be wronged again in the same way if the hotel does not change its service animal policies.
6 Shelley alleges that he lives near the Clarion Hotel and that he needed to stay at a hotel while his
7 residence was undergoing work that required him to stay elsewhere. He alleges that the hotel is
8 conveniently located near him and provides a great option for short-term lodging. He states that
9 he would like to return to the hotel if it institutes an anti-discrimination policy. FAC ¶¶ 20-22, 34.
10 Accordingly, the motion to dismiss for lack of subject matter jurisdiction on the basis of standing
11 is denied.

### C. Unruh Act Claim

Finally, Leisure Hotel Group argues that Shelley's claim under the Unruh Act should be dismissed because the court previously granted Leisure Hotel Group's request to deny supplemental jurisdiction over this claim. Mot. at 9.

The court agrees. At the hearing on Leisure Hotel Group's first motion to dismiss the complaint, the court noted that Shelley's opposition brief did not respond to Leisure Hotel Group's request to deny supplemental jurisdiction over the Unruh Act Claim, which amounted to a waiver of the argument. The court thus granted that portion of the motion. 8/10/2023 Minute Order. Shelley argues that he is making an "amended, renewed claim under the ADA and thereby a renewed amended claim under Unruh." Opp'n at 7. As Leisure Hotel Group points out, Shelley was granted leave to amend his complaint to cure the deficiencies in his ADA claim; he was not granted leave to re-plead his claim under the Unruh Act. *See* 8/10/2023 Minute Order.

To the extent Shelley is asking the court to reconsider its prior ruling, the request is denied. Pursuant to Civil Local Rule 7-9(a), "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." In addition, the moving party must specifically show reasonable diligence in bringing the motion along with one of the following:

14

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L-R 7-9(b). Shelley has not established any of the grounds necessary to warrant reconsideration of the decision the court already made to deny supplemental jurisdiction over his Unruh Act claim.

Shelley's claim under the Unruh Act remains dismissed without prejudice to his ability to raise it in a different court. By failing to respond to Defendant's original motion to dismiss the Unruh Act claim, Shelley waived the right to pursue that claim in this court.

## IV. CONCLUSION

For the foregoing reasons, Leisure Hotel Group's motion to dismiss the complaint is granted in part and denied in part. Shelley's Unruh Act claim is dismissed without prejudice to his ability to bring the claim in a different forum. The parties shall conduct a joint site inspection within 45 days of the date of this Order and shall otherwise comply with the deadlines set in the Scheduling Order for Cases Asserting Denial of Right of Access Under Americans With Disabilities Act Title II & III. [*See* Docket No. 5.]

**IT IS SO ORDERED.**

Dated: January 22, 2024

_____
Donna M. Ryu
Chief Magistrate Judge

15